IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BERNARDO COPLIN-BENJAMÍN, | |
| **Petitioner,** | **Civil No.** 24-1111 (FAB) |
| **v.** | related to |
| UNITED STATES OF AMERICA, | **Criminal No.** 18-066 (FAB) |
| **Respondent.** | |

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Before the Court is petitioner Bernardo Coplin-Benjamín ("Coplin")'s *pro se* motion to vacate his judgment in Criminal Case No. 18-066 pursuant to Title 28 U.S.C. § 2255 ("section 2255"). (Civil Docket No. 1.)  For the reasons set forth below, the petition is **DENIED**.

**I.   Background[1]**

On January 27, 2018, a vessel named the Black Wolfpack was intercepted in the Crown Bay Marina in St. Thomas by federal agents.  (Criminal Docket No. 439 at 4-5.)  The vessel was suspected of drug trafficking and was escorted back to the marina. (Id. at 5.)  Four individuals were on board – Katerín Martínez-

---

[1] The facts are taken from the record of United States v. Fígaro-Benjamín, *et al.*, CR 18-066 (D.P.R. 2022) (Besosa J.) and from United States v. Coplin-Benjamín, 79 F.4th 36, 39 (1st Cir. 2023).

Civil No. 24-1111 (FAB)                                                 2

Alberto, Alexandria Andino-Rodríguez, Maximiliano Figueroa-
Benjamín, and Emiliano Figueroa-Benjamín. (Id.) Agents found 132
kilograms of cocaine hidden onboard. (Id.) They also seized four
cell phones. Review of the cellphones showed a WhatsApp chat
between Maximiliano and Coplin planning the retrieval of 130
kilograms of cocaine. (Id.) The chat also confirmed that Coplin
was "in regular communication" with suppliers and key individuals.
United States v. Coplin-Benjamín, 79 F.4th 36, 39 (1st Cir. 2023).

     On February 28, 2019, Coplin was charged in a two-count
indictment with conspiracy to possess with intent to distribute a
controlled substance in violation of 21 U.S.C. § 846 (Count One),
and conspiracy to import controlled substances into the United
States in violation of 21 U.S.C. § 963 (Count Two). (Criminal
Docket No. 123.) Coplin retained attorney Ricardo Izurieta-Ortega
("Izurieta") as his counsel. Id. at 130.

     Izurieta had previously appeared at co-defendant
Maximiliano's initial appearance despite Maximiliano already
having been appointed counsel pursuant to the Criminal Justice Act
("CJA"). Id. at 27. At the time, Izurieta "did not have a contract
with [Maximiliano], or his family." Id. There were "serious
concerns regarding [Maximiliano's] Sixth Amendment rights."
Specifically, the Court found inconsistencies between
Maximiliano's ability to retain counsel, as evidenced by his sworn

financial affidavit, and Izurieta's presence as a private attorney claiming Maximiliano as a client.  Id.

After a hearing on the matter, the Court found that Izurieta's explanations were "unconvincing and full of holes."  Id.  The Court further held that, "Izurieta has shown lack of candor, has not been forthcoming with the Court, and has been evasive in addressing the Court's concerns … [Izurieta also] blatantly violated an order from the Court to withhold communications with the defendant and his family until this matter was resolved."  Id.  For these reasons the Court removed Izurieta from the case and proceeded with court-appointed counsel. (Criminal Docket No. 27 at 8.)  After a change of plea hearing, Coplin retained attorney Luis R. Rivera-Rodríguez (Rivera), and his court appointed counsel, Ms. Kendys Pimentel, withdrew from the case.  Id.

While Coplin's case was being processed, he made multiple requests to his attorney to negotiate a plea deal with the government. (Civil Docket No. 1 at 12.)  The government ultimately determined, however, and communicated to Coplin's attorney, that it was not interested in a plea deal unless Coplin agreed to cooperate. (Civil Docket No. 8, Ex. 1.)

Coplin's possible leadership role in the conspiracy became clear during one of Coplin's codefendant's testimony at trial. Coplin-Benjamín, 79 F.4th at 39.  Javier Resto-Miranda ("Resto"),

Civil No. 24-1111 (FAB)                                                4

one of Coplin's codefendants, explained that it was Coplin's idea

to buy a vessel to transport cocaine from St. Thomas to Puerto

Rico.  Id.  Coplin also gave Resto the funds to purchase the boats

that were used to traffic the drugs.  Id. at 42.  Resto explained

that "before every trip, Coplin would plan, meet with the

coconspirators, tell them what they needed to do, and give them

petty cash for food, gas, and supplies."  Id.

        The PSR calculated the guidelines at a base offense level

("BOL") of 36.  (Criminal Docket No. 439 at 8.)  The BOL was

increased by four levels because Coplin was a leader of a criminal

activity involving five or more participants.  Id.  Coplin's new

attorney filed objections to the PSR.  (Criminal Docket No. 462.)

He argued that the PSR's four level leadership enhancement was

unwarranted.  Id.  In response, the probation officer explained

that Coplin was not only the one who initiated the conspiracy and

purchased the vessels used to traffic the drugs, but also the one

who planned, organized, and instructed others in the organization.

(Criminal Docket No. 479 at 2-3.)  The probation officer also

explained that Coplin was the person who gave advice on what to

do, counted the money, and paid the co-conspirators.  Id.

        Coplin reiterated his objections to the PSR at sentencing

where he argued that he "could easily be identified as a

supervisor, but not as a leader."  (Criminal Docket No. 713 at 2.)

Civil No. 24-1111 (FAB)                                          5

Coplin claimed that because he was receiving orders from someone else, he should not be considered a leader. Id. at 2-3. He requested that the Court sentence him to 168 months. Id. at 4. The government explained that the facts showed Coplin's role as a leader and requested a low-end guidelines sentence of 262 months. Id. at 5-11. The Court ultimately sentenced Coplin to 262 months of imprisonment. Id. at 18. Coplin appealed, keeping attorney Rivera-Rodríguez as his appellate counsel. (Criminal Docket No. 690.)

On appeal Coplin argued that the district court erred in finding that Coplin was a leader and not a supervisor because there was another leader. Coplin-Benjamín, 79 F.4th at 40. The First Circuit Court of Appeals rejected his arguments and affirmed Coplin's sentence holding that "the district court's factual findings regarding Coplin's role in the conspiracy certainly support the inference that Coplin was indeed a leader." Id. at 42.

## II. Legal Standard

A person may move to vacate his or her sentence pursuant to section 2255 on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is

Civil No. 24-1111 (FAB)                                          6

otherwise subject to collateral attack."  28 U.S.C. § 2255(a); see
Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994).

"[P]ro se habeas petitions normally should be construed
liberally in petitioner's favor."  United States v. Ciampi, 419
F.3d 20, 24 (1st Cir. 2005) (citing Estelle v. Gamble, 429 U.S. 97,
106 (1976)).  The burden is on the section 2255 petitioner to
establish by a preponderance of the evidence that he or she is
entitled to section 2255 relief.  David v. United States, 134 F.3d
470, 474 (1st Cir. 1998); United States v. DiCarlo, 575 F.2d 952,
954 (1st Cir. 1978).

When "a petition for federal habeas relief is presented to
the judge who presided at the petitioner's trial, the judge is at
liberty to employ the knowledge gleaned during previous
proceedings and make findings based thereon without convening an
additional hearing."  United States v. McGill, 11 F.3d 223, 225
(1st Cir. 1993).  "Evidentiary hearings on § 2255 petitions are
the exception, not the norm, and there is a heavy burden on the
petitioner to demonstrate that an evidentiary hearing is
warranted.  An evidentiary hearing is not necessary when a
[section] 2255 petition (1) is inadequate on its face, or
(2) although facially adequate, is conclusively refuted as to the
alleged facts by the files and records of the case."  Moreno-

Civil No. 24-1111 (FAB)                                                7

Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003)

(citation omitted).

**III. Discussion**

Coplin contends that his Sixth Amendment right to effective assistance of counsel was violated. Specifically, he relates the following four counts of ineffective assistance of counsel: (1) failing to reach a plea agreement with the government despite repeated requests for a deal; (2) failing to raise an argument and present evidence that Coplin could not be a leader because he had only 2 kilos of cocaine out of a total of 132 kilos; (3) refusal to argue for Coplin's diminished role in the conspiracy due to a stated bias against citizens of the Dominican Republic; and (4) on appeal, not contacting the client or returning phone calls and promising a sentence reduction on appeal that never materialized. (Civil Docket No. 1.)

The Sixth Amendment grants criminal defendants the right to effective assistance of counsel throughout criminal proceedings. The Supreme Court has held that to determine whether a defendant received competent representation for purposes of the Sixth Amendment, the court must examine trial counsel's performance and determine whether counsel's deficient performance deprived the defendant of a fair trial. See Strickland v. Washington, 466 U.S. 668, 674 (1984). Strickland established a two-step framework for

evaluating ineffective assistance of counsel claims.  According to

that framework:

> "First, the defendant must show that counsel's
> performance was deficient. This requires showing that
> counsel made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the defendant by
> the Sixth Amendment.  Second, the defendant must show
> that the deficient performance prejudiced the defense.
> This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a
> trial whose result is reliable. Unless a defendant makes
> both showings, it cannot be said that the conviction or
> death sentence resulted from a breakdown in the
> adversary process that renders the result unreliable."
> Strickland, 466 U.S. at 687.

In other words, petitioner must show (1) that counsel's

performance was deficient and (2) that he was prejudiced by the

deficient performance.   To constitute deficient performance,

counsel's actions must fall "below an objective standard of

reasonableness." Strickland, 466 U.S. at 688.  The reviewing court

"must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance." Id.

at 689.  If deficient performance is demonstrated, a defendant

must also satisfy the prejudice prong of the Strickland test by

showing "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have

been different." Id. at 694.

Coplin's first claim is that Ms. Pimentel "refused and/or

outright ignored [Coplin's] requests, including [his] desire to

have his attorney negotiate a plea deal with the government."
(Civil Docket No. 1 at 13.)   This argument fails chiefly because
the government has provided evidence that they were unwilling to
offer him a plea deal without his cooperation.   (Civil Docket
No. 8, Ex. 1.)   The Supreme Court has held that "there is no
constitutional right to [a] plea bargain." Weatherford v. Bursey,
429 U.S. 545, 561 (1977); see also Missouri v. Frye, 566 U.S. 134,
148–49 (2012) ("[A] defendant has no right to be offered a plea
. . . nor a federal right that the judge accept it." (internal
citations omitted)).   Because there is no constitutional right to
a plea bargain and because the government has shown it was
unwilling to enter into a bargain with Coplin that did not involve
cooperation, petitioner has failed to present a constitutional
issue on his first claim.

Coplin's second claim similarly fails to establish
ineffective assistance of counsel.   Coplin alleges that his
attorney "failed to argue various points raised by [Coplin]"
including the argument that "[Coplin] couldn't possibly be the
leader of [the drug operation] [because] he had only two kilos out
of a grand total of 132 kilos [of cocaine]."   (Civil Docket No. 1
at 15.)   Coplin believes that had his attorney made this argument,
he would not been found to be a leader in the conspiracy and
therefore would have received a lighter sentence.   Id.

"[A]n attorney's performance is deficient . . . 'only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it.'" Vargas-De Jesús v. United States, 813 F.3d 414, 417-18 (1st Cir. 2016) (quoting Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)). Coplin's attorney's failure to make an argument about the amount of cocaine Coplin held in comparison with the rest of his coconspirators does not rise to the level of deficient performance. There are many reasons why his attorney may have made this strategic choice.  Indeed, a review of the record demonstrates that the evidence of Coplin's leadership went well beyond the amount of cocaine carried by each individual and included text messages and testimony from Coplin's codefendants. Coplin-Benjamín, 79 F.4th at 39.  In fact, the amount of cocaine on his person is not, on its own, relevant to Coplin's leadership in the conspiracy.  Once can easily imagine a scenario where the leader of a conspiracy has no drugs at all on his person yet still directs his subordinates to carry out a sale.  The Court finds that it is not unreasonable for Coplin's attorney to have determined that this was not a winning argument and to focus her attention elsewhere.

Coplin's last two claims are equally unavailing.  Petitioner bears the burden of establishing that he is entitled to relief.

See Rogers v. United States, 180 F.3d 349, 357 n.15 (1st Cir. 1999); see also Singleton v. United States, 26 F.3d 233, 236 (1st Cir. 1994) (holding that a 2255 petition must make "a sufficient showing of fundamental unfairness.")  On both the third and fourth claims, however, Coplin makes allegations that are unsupported by the record.

Assuming *arguendo*, that Coplin's attorney did make disparaging comments about Coplin's national origin and did promise a lighter sentence on appeal, neither of these instances satisfies the Strickland test for ineffective assistance of counsel because neither instance demonstrates deficient performance in court nor establishes what the resulting prejudice might be.  Strickland, 466 U.S. at 687.  From an overview of the docket and based in this Court's experience, Coplin's attorney's performance was satisfactory.  See United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) (holding that the Court may employ knowledge taken from previous proceedings before the same judge.) Indeed, on appeal, Coplin's appellate attorney provided the First Circuit Court of Appeals an in-depth brief making some of the same arguments Coplin sets forth in his section 2255 petition.

**IV.  Conclusion**

For the above reasons petitioner's motion to vacate his conviction pursuant to section 2255 is **DENIED**.  (Civil Docket

Civil No. 24-1111 (FAB)                                                    12

No. 1.)  Because he has not "made a substantial showing of the

denial of a constitutional right," <u>see</u> 28 U.S.C. § 2253(c)(2), no

certificate of appealability shall be issued.

  **IT IS SO ORDERED**.

San Juan, Puerto Rico, June 6, 2024.


                              <u>s/ Francisco A. Besosa</u>
                              FRANCISCO A. BESOSA
                              SENIOR UNITED STATES DISTRICT JUDGE